UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| Kyle Fulk<br>*Plaintiff* | ) | |
| v | ) | CASE NO. 5:14-cv-125-DCR |
| LVNV Funding L.L.C. et. al.<br>*Defendant* | ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Comes now the Defendant, LVNV Funding L.L.C., (hereafter LVNV), by counsel and for its brief in support of Defendant's motion to dismiss states as follows:

**FACTS**

The Plaintiff, Kyle Fulk, (hereafter Fulk) states in paragraph 24 of the complaint that LVNV filed suit against Fulk to collect an account from HSBC Bank Nevada, N.A./ Yamaha-RBP. The State court action is LVNV Funding LLC v. Kyle Fulk Fayette District Court 13-C-05547. A copy of the complaint is attached and incorporated by reference as Exhibit 1. Paragraph 25 of the complaint alleges the account concerned the sale of an ATV to Mr. Fulk by Hales Sport Center. Paragraph 28 of the complaint refers to discovery responses from LVNV funding showing the last payment date of November 18, 2008 and a charge off date of June 30, 2009. Paragraphs 27, 29 and 30 allege the application of Kentucky's UCC Article 2 statute of limitations for the sale of goods under KRS 355.2-725. Paragraphs 35, 36, 38 and 39 allege LVNV accrued interest on the account. Essentially, Fulk alleges violations of the Fair Debt

Collection Practices Act 15 U.S.C. 1692 et.seq. based upon accrual of interest and the filing of the state court action on an account beyond the contract for sale of goods four (4) year statute of limitations. The discovery responses referred to in paragraph 28 of the complaint included the application for the credit card for the purpose of have a card issued to Fulk where he could make purchases under the account by use of the card or signing of sales slip or phone or internet purchase pursuant to the cardholder agreement . A copy of the application is attached as Exhibit 2. The sales slip is an acknowledgment by Fulk of receiving a copy of the sales slip and a promise to pay the bank under the cardholder agreement. A copy of the sales slip is attached as Exhibit 3. The sales slip shows that it is HSBC's copy and contains the account number and an authorization code. See Exhibit 3. The state court complaint filed and the information LVNV provided in discovery shows a balance of $3,487.67 but for some reason Fulk apparently rounds up the balance in paragraphs 35 & 36 or the complaint to $3,488.00. See Exhibit 1 and Information with account balance provided in state court discovery attached as Exhibit 4.

**PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE IQBAL OR TWOMBLY STANDARD**

Fulk's complaint as plead fails to meet the standard to survive a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, 678; 129 S. Ct 1937, 1950 (2009) citing to **Bell Atl. Corp. v. Twombly,** 550 U.S. 544, 127 S. Ct. 1955 (2007) " only a complaint that states a plausible claim for relief to survives a motion to dismiss." In *Iqbal*, the Supreme Court indicated that Fed. R. Civ. P. 8 does not require detailed factual allegations but requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678; 129 S.Ct. 1949.

As a complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 679; 12 S.Ct. 1950. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555). The Court can take judicial notice of matters of public record in state courts and "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Bassett*, 528 F.3d at 430." **Rondigo L.L.C. v. Township of Richmond**, 641 F.3d 673, 681 (6th Cir. 2011). **Amini v. Oberlin College**, 259, F.3d 493, 502 (6th Cir. 2001). Furthermore, legal conclusions appearing as factual allegations do not have to be accepted as true. *Rondigo* at 680.

In the present case, Fulk's complaint as pled does not accurately state the balance in the complaint based upon the state law complaint and discovery responses referenced in paragraphs 24 & 27 of Fulk's complaint in this action. See Exhibits 1 and 4. Regardless, Fulk pleads than an "account" opened for the extension of credit with the national bank HSBC equates to a contract for sale for goods subject to the four (4) year statute of limitations under Article 2 of Kentucky's U.C.C. simply because Fulk used a line of credit form the National Bank at Hales Sport Center. See paragraph 24 of Fulk's complaint. This is a legal conclusion that does not have to be accepted

as true. Fulk's complaint as plead merely states (but inaccurately rounds up) the liquidated amount of debt but does not plead any other facts of how LVNV has no legal right to accrue interest. This is also a legal conclusion that does not have to be accepted as true and constitutes nothing more than the sheer possibility that LVNV funding violated the FDCPA. Fulk ignores that the state court action is under an agreement or account and an account is a separate theory and the debt is a liquidated amount bears interest under Kentucky law as a matter of right. Fulk's complaint fails to state a claim.

**KENTUCKY'S KRS 355.2-724 FOUR YEAR STATUTE OF LIMITATIONS DOES NOT APPLY TO AN ACCOUNT OR AN AGREEMENT BETWEEN FULK AND THE NATIONAL BANK OF HSBC FOR THE EXTENSION OF CREDIT**

The Supreme Court of Michigan in the case of **Fisher Sand and Gravel Co. v. Sweebe**, 837 N.W.2d 244 (Mich. 2013) went through a very detailed analysis demonstrating that U.C.C. four (4) statute of limitations under 2-725 does not apply to an action on an account or account stated. Those actions are an independent basis separate and distinct and do not constitute a contract for sale to which the 2-725 four (4) year statute of limitations does not apply. The relevant portions of ***Sweebe*** are as follows:

> At issue in this case is whether the four-year period of limitations in § 2725 of article 2 of Michigan's Uniform Commercial Code (UCC),[1]MCL ***440.2725, is applicable to actions on either an open account or an account stated when the underlying debt stemmed from the sale of goods. Because actions on an account stated and actions on an open account are distinct and independent from the underlying transactions giving rise to the antecedent debt, neither action is governed by the four-year limitations period provided in § 2725 of the UCC. Rather, both actions are governed by the six-year period of limitations*** provided in MCL 600.5807(8).
>
> Plaintiff provided concrete supplies to defendant commencing in October 1991. Plaintiff timely and regularly

> invoiced defendant for these supplies. Defendant made sporadic payments to plaintiff in random amounts. Plaintiff maintained an account that recorded the supplies sold to defendant and the payments defendant submitted to plaintiff on that account. Through the course of the litigants' business relationship, defendant never paid its account in full. <u>Id</u>. 547-548 (Emphasis Added)

***Sweebe's*** analysis as to account states was as follows:

> . . .*The account stated is a new, independent cause of action superseding and merging the antecedent causes of action represented by the particular items included in the computation.*
>
> In *White v. Campbell*, this Court likened the obligation to pay the antecedent debt to that commonly associated with a promissory note:
>
> [T]he agreed statement serves in place of the original account, *as the foundation of an action. It becomes an original demand*, and amounts to an express promise to pay the actual sum stated. The creditor becomes entitled to recover the agreed balance, *in an action based on the fact of its acknowledgment by the debtor*, upon an adjustment of their respective claims. The effect of the operation is said to be much the same as though the debtor had given his note for the balance.
>
> [A]s against a party receiving an account, and not objecting to it within a reasonable time, its correctness may be considered as admitted by him, and the balance as the debt; or, in other words, that the party rendering the account may, under such circumstances, treat it as an account stated.... If the party to whom the account is rendered, object[s] within a reasonable time, there is no room for inferring an admission of its correctness.
>
> In other words, the **<u>debtor's new promise to pay is a matter of express or implied contract</u>**, depending on the conduct of the parties. When the parties expressly agree to the sum due, the stated account forms an express contract. By contrast, when one party's assent is inferred from inaction, **<u>the stated account operates to form an implied contract</u>**. No matter the method of assent, the debtor in an account stated action has received goods or services without having paid for them, and an action exists when the price of those goods or services is greater than the sum paid.
>
> The Court of Appeals erroneously relied on the official comment to § 2725 of the UCC to arrive at its result. The official comments to the UCC do not have the force of law. When ascertaining the Legislature's intent, a reviewing court should

> focus first on the plain language of the statute in question, and when the language of the statute is unambiguous, it must be enforced as written. **Examining the plain language of § 2725, Professor Corbin concluded that, because an action on an account stated is not an action " for breach of any contract for sale," the four-year limitations period does not apply to actions on an account stated** Id. 558-559. (Emphasis Added)

***Sweebe's*** analysis as to an open account and its conclusion were as follows:

> An open account claim is not a breach of contract action for the sale of goods; it is an action to collect on the single liability stemming from the parties' credit relationship regardless of the underlying transactions comprising the account. Thus, the Court of Appeals erred by holding that the four-year period of limitations provided in § 2725 of the UCC applies to actions on an open account.
>
> We further conclude that an open account, like an account stated, is premised on an express or implied contract. In some instances, the credit relationship between the creditor and debtor may be defined by an express contract. Yet, in other instances, the credit relationship will arise from the parties' course of dealing. **Having established that an open account claim is an action for breach of an express or implied contract, we conclude that open account claims are subject to the six-year period of limitations governing general contract actions** provided in MCL 600.5807(8). **Id.** 570-571 (Emphasis Added)

It is clear from the ***Sweebe*** analysis including the reference to Professor Corbin's comment the applicable limitation of action depends upon nature of the cause of action. Actions on account and account stated being independent and actions on express or implied contract and not for sale, the applicable statute of limitations does not fall under Article 2 of the U.C.C. Kentucky law is in accord with the analysis under ***Sweebe***.

The court in **Henderson Cotton Manufacturing Co. V. Lowell Machine Shops**, 7 S.W. 142, 145 (Ky. App. 1888) explained an account stated as follows:

> An account is to be considered as liquidated after a demand of payment, with knowledge of what is claimed upon the part of the debtor, and without objection by him; or, <u>after it has been rendered to him, without objection to it upon his part within a reasonable time</u>. *Walden v. Sherburne*, 15 Johns. 409. <u>The assent of both parties to it, as stated, is thereby implied. Story says: "An account rendered shall be deemed an account stated, from the presumed approbation or acquiescence of the parties, unless objections be made thereto within a reasonable time."</u> 1 Story Eq. Jur. § 526. The rendering of the account is equivalent to a demand of payment. It informs the debtor as to the character and amount of the claim; he may examine it, and, if no objection be made, it then becomes a stated one, and, from that time, a liquidated claim. 1 Suth. Dam. 615. He then knows that payment is desired, and he then becomes chargeable with delinquency, if he fails to pay. He is using the creditor's means, and not his own, and he should therefore render an equivalent by paying for its use. (Emphasis Added)

*See Also*, **<u>Whayne Supply Co. V. Gregory</u>**, 291 S.W.2d 835,837-838 (Ky 1956) where the court reversed the trial court holding that the appellant was entitled to a directed verdict for the amount in the open account when the appellee admitted not paying the account.

In the unpublished case of ***Applied Sealing Technology Inc. v. B&R Rubber and Supply Co***, Ky. App. No. 2006-CA-001351, October 5, 2007, the court held that KRS 355.2-725 did not apply to an action on an account. The court in relevant part stated as follows:

> The issue of limitation centers around two sections of KRS, the four year statute KRS 355.2-725(1) and the five year statute KRS 413.120(10). The relevant language of KRS 355.2-725(1) is "An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued." KRS 413.120(10) allows five years for "an action upon merchant's account for goods sold and delivered, or any article charged in such store account." **<u>The Master Commissioner's reasons for applying the 5 year statute were that it was more recent, more specific, and provides the longer period of time. We agree.</u>** **<u>Our rules of statutory construction are that a special statute preempts a general statute, that a later statute is given effect over an earlier statute, and that because statutes of limitation are in derogation of a presumptively valid claim, a longer</u>**

> **period of limitations should prevail where two statutes are arguably applicable.**
> *Troxell v. Trammell*, 730 S.W.2d 525,528 (Ky. 1987). Again, we see no abuse of discretion present on this issue and affirm.
> (Emphasis Added)

In **Troxell v. Trammell**, 730 S.W.2d 525, 528(Ky. 1987) the Kentucky Supreme court held that when cause of action deals with a motor vehicle and a personal injury claim the longer motor vehicle statute of limitation applied.

In the present case, LVNV filed suit under the alternate theories of an agreement or account. An action on an account or account stated is a separate action and not a contract for sale. KRS 413.120(1) provides for a five (5) years statute of limitations on contracts not in writing express or implied. LVNV's complaint under an account or contract not considered in writing express or implied would have a five (5) year statute of limitations under KRS 413.120 and the suit was filed July 22, 2013 was within five (5) years of the date of last of November 18, 2008 or charge off on June 30, 2009. Alternatively, for the sake of argument, if one were accept Fulk's allegations in paragraphs 25 through 27 of his complaint that the account was concerned the sale with a the merchant or store of Hales Sport Center, the account would fall in line with the situation in ***Applied Sealing Technology*** and the longer five (5) year statute of limitation of KRS 413.120 would apply over KRS 355.2-725. Regardless, agreement was for the extension of credit and not the sale of good.

The application attached as Exhibit 2 is an application for the extension of credit and not a contract for sale. Under the "Applicant(s) Signature" section the application states "By completing and signing this application, you request a Card issued to you by us which will allow you to make purchases under this account. By a) signing, using or permitting others to use

this Card: b) signing or permitting others to sign sales slips. . .you agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement...” The application is signed twice by Fulk. Once to apply and a second time after approval for verification of an APR disclosure and that section contains the account number. The sales slip attached as Exhibit 3 contains the account number, indicates it is HSBC’s copy on the side, contains an authorization code. The signature on the sales slip is an acknowledgment of receipt of the sales slip and “promise to pay the Unpaid Balance plus any Finance Charges and fees due in accordance with the terms of the Cardholder Agreement. . .” The application is between Fulk and the national bank HSBC for the extension of credit. The sales slip is an acknowledgment and promise to pay to the national bank HSBC for Fulk’s use of the line of credit. If the application and sales slip constitute an agreement, the agreement is for the extension use of credit and not a contract for the sale of goods.

The case of **Oliphant Financial LLC v. Galaviz**, 299 S.W.3d 829 (Tex. App. 2009) shows how a Yamaha account with Household Bank or HSBC is a credit card and not a contract for sale and constitutes a liquidated claim. ***Oliphant Financial*** in relevant part states:

> In its petition, Oliphant alleged Household Bank and Galaviz entered into a " Revolving Credit Account" ; Household Bank opened a certain account; Galaviz made purchases on the account but failed to pay the amount due; and Oliphant purchased Galaviz's account from Household Bank.. . .
>
> The affidavit then repeats the Household Bank credit account number. It states Oliphant's customer account number and the " charge off balance" and " current balance" as $16,024.23. It notes the " account type" as " Yamaha-serviced."
>
> Here, the petition, motion for default judgment, and attached documents show Galaviz opened a credit account with Household Bank, was issued a Yamaha credit card, and charged certain items on the account as shown by receipts he signed; the same account number is reflected on all documents in the record. The record

> shows Galaviz's account balance was $16,024.23 as of the charge-off date and when Oliphant acquired it and sued Galaviz to recover this debt. The charge-off date and the interest rate are shown. <u>Because we conclude the damages caused by Galaviz's failure to pay can be accurately calculated from the factual allegations in the petition and the instruments in writing, we further conclude Oliphant showed it was entitled to default judgment on liquidated damages</u>. *See id.; Freeman,* 503 S.W.2d at 408.
>
> In reaching our conclusion, we consider the three purported deficiencies related to damages identified by the trial court in its October 19, 2007 Order to Amend Petition and reject them as follows. First, concerning " no evidence that the amount of the account or price charged is in accordance with an express contract or is usual, customary, and reasonable,"<u> the exhibits attached to the motion for default judgment showed the jet ski bought on Galaviz's account, his signature on those receipts</u>, the charge-off date, and the interest rate. **<u>Id</u>**. 834 -838. (Emphasis Added)

In the present case, LVNV is similar to Oliphant. See Exhibits 2, 3, & 4. The agreement is for a credit card or revolving credit line and not a contract for sale. The nature of a credit card and how it is not a contract for sale is explained in **<u>Harris Trust and Savings Bank v. McCray</u>**, 316 N.E.2d 209 (Ill. App. 1974) as a loan of money under a tripartite relationship between the issuing bank, cardholder and merchant. ***Harris*** in relevant part states:

> The bank credit card system involves a tripartite relationship between the issuer bank, the cardholder, and merchants participating in the system. <u>The issuer bank establishes an account on behalf of the person to whom the card is issued, and the two parties enter into an agreement which governs their relationship</u>. This agreement provides that the bank will pay for cardholder's account the amount of merchandise or services purchased through the use of the credit card and will also make cash loans available to the cardholder. It also states that the cardholder shall be liable to the bank for advances and payments made by the bank and that the cardholder's obligation to pay the bank shall not be affected or impared by any dispute, claim or demand by the cardholder with respect to any merchandise or service purchased.

> The merchants participating in the system agree to honor the bank's credit cards. The bank irrevocably agrees to honor and pay the sales slips presented by the merchant if the merchant performs his undertakings, such as checking the list of revoked cards before accepting the card. The sales slips signed by the cardholder at the time of the purchase contain the following undertaking by the cardholder:
>
> I hereby authorize the Issuer of the Midwest Bank Card imprinted above to pay the amount shown as Total hereon upon presentation hereof to Issuer by a bank which is a member of the Midwest Bank Card system. I hereby promise to pay said Issuer the amount shown as Total hereon (together with other charges due thereon, if any) subject to and in accordance with the terms of the cardholder agreement governing the use of Issuer's Midwest Bank Cards.
>
> These slips are forwarded to the member bank which originally issued the card. The cardholder receives a statement from the bank periodically and may then decide whether to make payment to the bank in full within a specified period, free of interest, or to defer payment and ultimately incur an interest charge.
>
> We believe that money advanced to a merchant in payment for merchandise received by the defendant constitutes a loan. The defendant promised to repay the bank for money it paid to the merchant for her benefit. The credit card allowed defendant to make use of the resources of ths issuer bank, and the merchant is in the same financial position as if he were receiving cash from the bank at a small discount for its service. Under this arrangement, the bank assumed the risk that the cardholder would not pay the debt and has no recourse against the merchant.
>
> In view of the foregoing, we conclude that the payments made by the plaintiff to the merchants pursuant to the cardholder agreement constituted a loan of money. Thus, plaintiff's cause of action was governed by the 10 year limitation applicable to written contracts, including promises to pay money. It was not barred by the expiration of the four year statute of limitations governing contracts for the sale of goods. Id. 210-212 (Emphasis Added).

In the present case, similar to ***Harris***, the sales slip contains a promise to pay pursuant to the cardholder agreement and the sales slip shows that it is HSBC's copy, just like Harris describes, and that the sales slips are forwarded to the member bank. The application is for an

extension of credit between the bank and Fulk. Therefore, the agreement or account is not a contract for the sale of goods but one for the extension of credit and KRS 355.2-725 does not apply. Fulk can not state a claim based upon the four (4) statute of limitations because either it does not apply to the agreement or account with HSBC or KRS 413.120 may also apply and under ***Troxell*** the longer five (5) year statute of limitations applies.

**THE STATE COURT ACTION UNDER AN AGREEMENT OR ACCOUNT IS LIQUIDATED AND STATUTORY PREJUDGMENT INTEREST IS ALLOWED UNDER THE LAW AND FULK CAN NOT STATE A CLAIM BASED UPON THE ACCRUAL OF INTEREST**

The Kentucky Supreme Court in **Nucor Corp. v. General Electric Co.**, 812 S.W.2d 136,141 (1991) "When the damages are "Liquidated," prejudgment interest follows as a matter of course. Precisely when the amount involved qualifies as "Liquidated" is not always clear, but in general 'liquidated' means '[m]ade certain or fixed by agreement of parties or by operation of law.'[citation omitted] Common examples are a bill or note past due, an amount due on an open account, or an unpaid fixed contract price." (Emphasis Added). In fact ***Lowell supra*** from 1888 explains the history and reasoning of why interest is allowed on a liquidated claim where it states:

> The true ground upon which to put the allowance of interest is the fault of the party who is to pay the debt. If he has made default of payment, then, *ex aequo et bono*, he should reimburse the creditor for keeping him out of the use of his money. He should render an equivalent for the use of what is not his own. If there be a specified time for payment, and a failure to then pay, or a demand of payment of a liquidated claim, and default, then the debt should, as a matter of law, bear interest from the time of such failure. This is the current of authority, and it is supported by both right and reason. In the case of *Young v. Godbe*, 15 Wall. 562, the supreme court said: "If a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time, by way of compensation for the

> delay in payment. And, if the account be stated, as the evidence went to show was the case here, interest begins to run at once." 1 Sutherland on Damages (page 596) repeats the same rule when he says: "In this country, the principle has long been settled that if a debt ought to be paid at a particular time, and is not then paid, through the default of the debtor, compensation in damages, equal to the value of the money which is the legal interest upon it, shall be paid during such time as the party is in default. ***Lowell*** at 145

In addition to ***Nucor*** and ***Lowell***, other Kentucky cases show one is entitled to interest as a matter of law on a liquidated claim. **Pursley v Pursley**, 144 S.W.3d 820, 828-829, fn.40 (Ky. 2004) *See* ***Mcelhinney v. Hosea***, Ky. App. No. 2011-CA-001217 , 2011-CA-1256, June 28, 2013 ( prejudgment interest on a liquidated claim is not a matter of discretion and follows as a matter of law and begins from the date the balance is due citing *Nucor* and *Pursley*.) *See* ***Panariello v. Panariello***, Ky. App. No. 2012-CA-1383, January 31, 2014 (interest accrues as a matter of law on a liquidated claim and even if not raised to the court. J. Maze concurring opinion.)

In the present case, LVNV's claims in the state court action under either an agreement or account are liquidated under the case law cited above. The right to statutory prejudgment interest exists by the nature of the debt itself when it is liquidated and unpaid. The right statutory prejudgment interest on a liquidated claim is not discretionary with the trial court and interest accrues from when the liquidated claim is due. ***Nucor***, ***Lowell***, and ***Pursley*** *supra.* The right to accrue interest on a liquidated claim has existed under Kentucky law since before 1888. Fulk's claims under the FDCPA are simply related to the fact that interest was accrued. Given the status of Kentucky law since before 1888 allowing for the accrual of interest on a liquidated claim such as an amount due under an agreement or account, ( See Exhibits 2, 3, 4), Fulk's

claims related to the accrual of interest based upon the fact that interest accrued or was added without the legal right to do so are without merit. Based on the foregoing, Fulk can not state a claim based on the accrual of interest.

## CONCLUSION

LVNV's state court action on a agreement or account was filed within five (5) years of the last payment date or charge off date. An action under an agreement or account is controlled at least by the statute of limitations under KRS 413.120 and not KRS 355.2-725 or both may be applicable and under ***Troxell*** Kentucky applies the longer five (5) year statute of limitations. LVNV's claim in the state court action are liquidated and based on Kentucky law going back before 1888 prejudgment interest follows as a matter of law on a liquidated claim and LVNV had the legal right to accrue or add statutory interest. Fulk's claims under the FDCPA based upon the four (4) year statue of limitations and adding of interest do not state a claim and all claims against LVNV should be dismissed.

Prepared By:
_/s/ Charlie Gordon_______________________
Charlie Gordon
Counsel for Defendant, LVNV Funding LLC.
*Greene & Cooper LLP*
2210 Greene Way - P.O. Box 20067
Louisville, Kentucky 40250-0067
(502) 495-6500
(502) 495-2429 fax
cgordon@greenecooper.com E-mail

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically and mailed to the following on this 15th day of May, 2014.

James H. Lawson
*Lawson at Law, PLLC*
4055 Shelbyville Road, Suite B
Louisville KY 40207

/s/Charlie Gordon
Charlie Gordon
Counsel for Defendant, LVNV Funding LLC.