UNITED STATES DISTRICT COURT
for the
**Eastern District of Kentucky**
**Lexington Division**

| | | |
|---|---|---|
| Kyle Fulk<br>*Plaintiff* | ) | |
| v. | ) | Case No. 5:14-cv-00125-DCR |
| Cavalry Portfolio Services, LLC, *et al.*<br>*Defendants* | ) | |

**Plaintiff's Response to Defendant LVNV Funding's Motion to Dismiss**

Plaintiff Kyle Fulk objects to Defendant LVNV Funding, LLC's ("LVNV") motion to dismiss. The complaint alleges that LVNV violated the Fair Debt Collection Practices Act ("FDCPA") by accruing interest on Mr. Fulk's debt and reporting that accrued interest was due and owing to one or more consumer credit reporting agencies when said interest was not due and owing. The complaint also alleges that LVNV violated the FDCPA by filing suit on a time-barred debt. Both of these state valid claims for relief under the FDCPA.

Concerning Mr. Fulk's interest-based claims, LVNV argues that it has the right to assess, accrue, and collect prejudgment interest without the benefit of a judgment or any judicial oversight. But by definition an award of *prejudgment* interest requires a *judgment* entered by a trial court pursuant to judicial scrutiny in order to be due and owing. Indeed, the very case law on which LVNV relies are prejudgment-interest cases that concern the award of prejudgment interest pursuant to a judgment by a trial court. Plaintiff has alleged, and will show, that no provision of Kentucky law permits unilateral accrual and demand for interest pre-judgment as an extrajudicial self-help remedy.

In self-awarding prejudgment interest to itself, LVNV presumes (1) that Mr. Fulk's debt is a liquidated in a sum-certain amount; (2) that its claim against Mr. Faulk is undisputed by him; (3) that its right to accrue and assess prejudgment interest began to run upon acquisition of Mr. Fulk's debt; and (4) that he resided in Kentucky for the entire period of time in which it extra-judicially accrued and assessed interest—purportedly pursuant to Kentucky law—on Mr. Fulk's debt. All of these presumptions are demonstrably wrong or subject to good-dispute and debate.

LVNV purchased Mr. Fulk's debt for pennies on the dollar. A very compelling argument can be made *to a trial court* that the court should use its discretion and equitable power to limit prejudgment interest to the amount that LVNV had invested in the debt rather than on the face amount of debt due.

Next, Mr. Fulk disputes in good faith that LVNV has the right to judgment against him in LVNV's state-court action. Rather, as explained below, LVNV's claim is barred by the applicable statute of limitations.

Next, LVNV began accruing and assessing prejudgment interest on Mr. Fulk's debt years before it had any legal right to recover prejudgment interest as damage. Under Kentucky law, the right to prejudgment interest at the legal rate begins run on demand and not from the date of acquisition or sooner as LVNV appears to believe.

Finally, LVNV accrued, assessed, and attempted to collect prejudgment interest under Kentucky law on Mr. Fulk's debt for a period over a year during which time he lived in Ohio.

In sum, LVNV simply presumes too much and too much incorrectly in extra-judicially accruing, assessing, and attempting to collect prejudgment interest prior to entry of judgment awarding it the right to recover prejudgment interest from Mr. Fulk.

## I. Standard of Review

> Upon a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2409, 138 L.Ed.2d 175 (1997). A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright v. MetroHealth Medical Center,* 58 F.3d 1130, 1138 (6th Cir.1995), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 188 (1996). A Fed.R.Civ.P. 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994).

*Edwards v. U.S., Dept. of Energy*, 371 F. Supp. 2d 859, 861 (W.D. Ky. 2005) *aff'd sub nom.* *Edwards v. U.S. Dept. of Energy*, 200 F. App'x 382 (6th Cir. 2006).

## II. The Complaint States a Valid Claim for LVNV's Violations of the FDCPA

To establish a prima facie case for a violation of the FDCPA, plaintiffs must prove four essential elements:

> 1. the plaintiff is a natural person who is harmed by violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.A. §§ 1692a(3), 1692(d) for purposes of a cause of action, 15 U.S.C.A. § 1692c or 15 U.S.C.A. § 1692e(11);
>
> 2. the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692a(5);
>
> 3. the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.A. § 1692a(6); and
>
> 4. the defendant has violated, by act or omission, a provision of the FDCPA, 15 U.S.C.A § 1692a-1692o; 15 U.S.C.A § 1692a; 15 U.S.C.A § 1692k.

*Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 938-939 (N.D. Ohio 2009).

Mr. Fulk's complaint alleges that he is a "consumer" within the meaning of the FDCPA. Complaint, doc. #1 at ¶5.

The complaint alleges that Mr. Fulk purchased the ATV at issue in this case in connection with the debt LVNV attempted to collect from him for personal, family, or household purposes, which makes the debt at issue in this case a "debt" within the meaning of the FDCPA. 15 U.S.C. § 1692a(5). *Id.* at ¶¶24-26.

And the complaint alleges that LVNV is a "debt collector" within the meaning of the FDCPA. *Id.* at ¶¶8-9.

In its motion to dismiss, LVNV does not take issue with any of the first three elements set forth above. Rather, LVNV focuses solely on Mr. Fulk's allegations that LVNV violated one or more provisions of the FDCPA. Consequently, the argument below focuses on LVNV's violation of the provisions of the FDCPA by **(1)** accruing prejudgment interest on his debt LVNV had no present right to assess or collect and furnishing false information concerning Mr. Fulk to one or more consumer reporting agencies that included the impermissible accrued interest on the debt, and **(2)** filing suit against him on a time-barred debt.

## III. LVNV Violated the FDCPA by Accruing Interest on Mr. Fulk's Debt that is Neither Authorized by Contract nor Permitted by Law

### A. Relevant Facts

Mr. Fulk purchased an ATV from Hales Sport Center, Inc. in Mansfield, OH on October 1, 2006. Fulk affidavit, Exhibit "A."

Mr. Fulk financed the purchase of the ATV through HSBC Bank Nevada, N.A./Yamaha-RBP ("HSBC"). Complaint, doc.# 1 at ¶24.

As a result of the financial pressures from a recent divorce, Mr. Fulk could no longer make payments on the ATV. Mr. Fulk's made his last payment on the debt on November 18, 2008. *Id.* at ¶28. Mr. Fulk still resided in Ohio on the date of the last payment. Fulk affidavit, Exhibit "A."

HSBC charged off Mr. Fulk's account on June 30, 2009 in the amount of $3,488.00 (rounded to the nearest dollar). Complaint, doc.# 1 at ¶35

LVNV purchased Mr. Fulk's debt on from HSBC in July 2009 and $3,488.00 (rounded) was still the face amount due on the debt on the date of sale. *Id.* at ¶36. LVNV paid $173.00 or less to purchase the debt. Id. at ¶37.

Mr. Fulk moved from Ohio to Kentucky in February 2010. Fulk affidavit, Exhibit "A."

On March 3, 2014, Mr. Fulk ordered, received, and reviewed a copy of his consumer credit report issued by Creditexpert, Inc. in conjunction with application for a home loan or loan modification. The March 3rd Creditexpert consumer credit report included credit information reported by all three major national consumer reporting agencies: Equifax Information Services, LLC; Experian Information Solutions, Inc.; and Trans Union, LLC. Complaint, doc.# 1 at ¶¶12-13.

Mr. Fulk's March 3rd Creditexpert consumer credit report included negative information furnished by LVNV concerning Mr. Fulk and the HSBC debt. *Id.* at ¶38.

The information furnished by LVNV on Mr. Fulk's March 3rd Creditexpert consumer credit report states that $4,771.00 was the amount due and owing on the debt as of February 2014, or $1,283.00 more than the face amount due on the date that LVNV purchased the debt. *Id.* at 38.

**B. Reporting Negative Information on a Credit Report is an Attempt to Collect a Debt under the FDCPA**

"[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms . . . .'" *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002). In *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297 (6th

Cir. 2008) the Sixth Circuit Court of Appeals "assume[d] without deciding that the reporting of the debt to [a consumer reporting agency] constitutes a 'collection activity'" under the FDCPA. *Id.* at 304, n.5. The *Purnell* Court relied on an opinion letter from the FTC that provides in pertinent part: "[D]ebt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." December 23, 1997, letter from Federal Trade Commission Attorney John F. LeFevre to Robert G. Cass. *Accord Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1035-36 (D. Minn. 2010) *aff'd*, 413 F. App'x 925 (8th Cir. 2011); *Quale v. Unifund CCR Partners,* 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010); *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993); *Matter of Sommersdorf*, 139 B.R. 700, 702 (Bankr. S.D. Ohio 1991); *Semper v. JBC Legal Group*, 2005 WL 2172377, *4 (W.D. Wash. 2005).

And of course communicating negative credit information that a debt collector knows and should have known is false violates 15 U.S.C. § 1692e(8). *See e.g. Smith v. Encore Capital Group, Inc.*, 966 F. Supp. 2d 817, 826 (E.D. Wis. 2013).

### C. Collection and Attempts to Collect Unauthorized Interest Violates the FDCPA

Attempts to collect even very small interest overcharges violate the plain language of 15 U.S.C. § 1692f(1). *Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000). In *Duffy*, the debt collector sent the debtor appellants dunning letters that overstated interest charges in the amount of $1.29, $1.84, and $.65. *Id.* at 874. Finding that these letters violated the FDCPA, the *Duffy* Court explained that "although the interest calculations were admittedly only slightly overstated, the letters seeking these overstated interest charges were nonetheless an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1)." *Id.* at 875. *Accord Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) (holding that interest and late charges imposed by the collection agency exceeded a state limitation of 10% and violated §

1692f(1)); *Cadle Co. v. Steiner*, 2011 WL 925450 (Conn. Super. Ct. Feb. 10, 2011) (holding that the debt collector's demand of improperly calculated interest in excess of that allowed by statute violated the FDCPA); *Melillo v. Shendell & Assocs., P.A.*, 2012 WL 253205 (S.D. Fla. Jan. 26, 2012) (holding that the complaint stated a § 1692f claim by alleging that the defendant sent a dunning letter that sought to collect five months of interest when only three months of interest would have been due); *Egletes v. Law Offices Howard Lee Schiff, P.C.*, 2010 WL 3025236 (D. Conn. July 30, 2010) (holding that where the defendant attempted to garnish wages with interest on the judgment when the judgment struck a provision for interest, it was "inexcusable" for the collection lawyers to seek interest); *Carrizosa v. Stassinos*, 2010 WL 144807 (N.D. Cal. Jan. 10, 2010) (granting summary judgment on the consumers' § 1692f(1) claim where the debt collector attempted to collect both prejudgment interest and treble damages when state law prohibited the collection of both amounts); *In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002) (holding that purchaser of defaulted note violated the § 1692f(1) by demanding interest even though it had no documents on which it could determine how much interest it was entitled to demand).

Consequently, by averring that LVNV attempted to collect unlawful and unauthorized interest from Mr. Fulk in connection with collection of a debt states a valid claim for relief under the FDCPA.

**D. Summary of the Argument**

In its motion to dismiss, LVNV argues that prejudgment interest under Kentucky law can be accrued, assessed, and collected prior to and without any entry of judgment awarding it prejudgment interest. LVNV offers no law to support this position. Rather, LVNV relies on case law that clearly and plainly addresses prejudgment interest awarded by a trial court as part of a judgment. LVNV argues that it was permitted to accrue prejudgment interest on Mr. Fulk's debt

extra-judicially because the debt was liquidated. But this is a simplistic argument that ignores the equitable nature of prejudgment interest. Kentucky case law is clear that prejudgment interest is a consequential damage that is left to the court's discretion. *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 143 (Ky. 1991). Consequently, LVNV had no legal right to accrue prejudgment interest on Mr. Fulk's debt prior to entry of judgment in its favor as it argues in its motion to dismiss.

But even if the Court concludes that prejudgment interest is an extrajudicial remedy that does not require entry of a judgment, LVNV still violated the FDCPA by accruing interest on Mr. Fulk's debt at a usurious rate. Specifically LVNV furnished information to one or more consumer reporting agencies that included interest LVNV accrued, assessed, and attempted to collect on Mr. Fulk's debt at the rate of almost 14% per annum. This interest rate exceeds the 8% maximum legal rate of interest set forth in KRS 360.010.

LVNV also violated the FDCPA by accruing interest on Mr. Fulk's debt prior to the time that interest began to run on the debt. The right to statutory interest under Kentucky law begins to run from the date the payment is due and owing. Payment only becomes due and after demand for payment is made. LVNV began accruing statutory interest on Mr. Fulk's debt from the date it acquired the debt. But LVNV did not demand payment or even notify Mr. Fulk that it acquired the debt until more three years after it acquired the debt.

**E. LVNV had no Right to Accrue Prejudgment Interest on Mr. Fulk's Debt Prior to Entry of a Judgment Awarding LVNV Prejudgment Interest**

LVNV argues that prejudgment interest is a self-help remedy, the right to which does not depend on entry of judgment or even filing suit. LVNV therefore argues that it has a present right to accrue, assess, and attempt to collect prejudgment interest from Mr. Fulk without any judicial oversight. This is not the law in Kentucky. Rather, Kentucky law is clear that prejudgment interest

is a consequential damage that is awarded by the trial court pursuant to a judgment. There is no present right to accrue, assess, or collect prejudgment interest prior to entry of judgment.

LVNV simplistically argues that it has a self-help right to prejudgment interest because its claim is liquidated. But whether the debt is liquidated is just the beginning of what's entailed in awarding prejudgment interest as damages. There is also the issues of whether the amount of or liability for the debt disputed. Then there is the question of *when* the right to prejudgment interest begins to run. Under the facts of this case, there is also the question of whether LVNV may recovery prejudgment interest accrued and assessed under Kentucky law for a time period in which Mr. Fulk lived in Ohio.

Moreover, there are strong and compelling reasons why a third-party debt buyer like LVNV should not be able to presume that any debt that it purchases is liquidated or that there is no dispute as to the amount of the debt or liability for the debt.

LVNV purchased Mr. Fulk's debt from HSBC as part of a huge portfolio of debts. The sale documents from HSBC most likely include disclaimers of warranty and accuracy and may even include notice that the portfolio includes "ineligible" debts that may have been paid, settled, discharged in bankruptcy, or were incurred as the result of identity theft. Consequently, the sale documents undermine any basis on which LVNV could find in good faith that any of the debts transferred under the Bill of Sale were liquidated and there was no dispute as to the amount of the debt or liability for the debt.

Moreover, there are well-documented problems associated with the accounting and record-keeping practices of original creditors concerning charged-off accounts that are later bundled together and sold for pennies on the dollar to third-party debt buyers and collectors.

These problems, when coupled with the other problems mentioned above, completely

eliminate any good-faith basis on which LVNV could award itself prejudgment interest. Rather, all these problems demonstrate why prejudgment interest requires judicial oversight and such interest can only be accrued, assessed, and collected pursuant to a duly authorized judgment awarding prejudgment interest.

**i. Prejudgment Interest is not a Self-Help Remedy**

LVNV seriously misstates Kentucky law as it applies to the award of prejudgment interest. Prejudgment interest under Kentucky law is just that: interest that is awarded as consequential damages by the court as part of a judgment. As explained by the Sixth Circuit Court of Appeals,

> As to pre-judgment interest, Kentucky law provides that it is due "as a matter of course" where damages are liquidated, *i.e.*, "made certain or fixed by agreement of parties or by operation of law" **at the time the complaint is filed.** *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141, 144 (Ky. 1991) (citation omitted). However, "interest should not be required except for a claim which is for a liquidated amount, and which is not disputed in good faith." *Wittmer v. Jones*, 864 S.W.2d 885, 891 (Ky. 1993). **The decision whether to award prejudgment interest under Kentucky law is committed to the trial court's discretion.** *See Murray v. McCoy*, 949 S.W.2d 613, 615 (Ky. 1996).

*Kentucky Sch. Bds. Ins. Trust v. Horace Mann Ins. Co.*, 1999 U.S. App. LEXIS 21094, 19-20 (6th Cir. Ky. Aug. 27, 1999) (bolding added).

*Nucor Corp.*, on which LVNV heavily relies, is Kentucky's seminal case on prejudgment interest. *Nucor Corp.* repeatedly states and makes clear that awarding prejudgment interest is decision to be made by the trial court. *Nucor Corp.*, 812 at 144. Nothing in *Nucor Corp.* supports LVNV's argument that prejudgment interest is a self-help extrajudicial remedy. Indeed, other cases demonstrate why prejudgment interest cannot be accrued, assessed, and collected without judicial oversight. Under Kentucky law, even when damages are liquidated in an undisputed sum-certain amount, the trial court retains discretion to deny prejudgment interest on equitable grounds.

For example, in *Owensboro Mercy Health Sys. v. Payne*, 24 S.W.3d 675 (Ky. Ct. App. 1999), the trial court denied the plaintiff prejudgment interest on an undisputed, liquidated sum on grounds that the defendant disputed liability for the debt. *Id.* at 679. The Court of Appeals affirmed. *Id.*

*Nucor Corp.* emphasizes the equitable nature of the trial court's award of prejudgment interest:

> Interest is charged not only because of the value to the one who uses money, but also as compensation to the one who has been deprived of the use of money. *Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness; it is denied when its exaction would be inequitable*. . . . the tendency of the courts is to charge and allow interest in accordance with the principles of equity, to accomplish justice in each particular case.

*Nucor Corp*., 812 S.W.2d at 143 (quoting 47 C.J.S., *Interest and Usury*, § 6 (1982) and emphasis added).

Consistent with *Payne* and the above quote from *Nucor Corp.*, a strong argument can be made that LVNV should only be allowed prejudgment interest on the amount invested in the debt, around $175.00, rather than the full face value of the debt, which is $3,488.00. This is in keeping with the purpose of awarding prejudgment interest, which compensation for the deprivation of the loss of use of money, rather than as windfall for a debt buyer. Certainly, a trial court would have the discretion and equitable power to award prejudgment interest on the amount invested only rather than the full face value of the debt. Because the debts purchased in a portfolio are purchased in bulk rather than individually priced, awarding prejudgment interest based on the amount actually invested means that there is no liquidated amount. Rather, the amount invested in the debt itself would have to be estimated and proved. Under this scenario, there are no liquidated damages in this case.

So prejudgment interest is not, as LVNV argues, a self-help remedy that allows LVNV to unilaterally and extra-judicially award interest to itself. As this Court recently implicitly found that prejudgment interest can only be awarded by a court as part of a judgment. *Stratton v. Portfolio Recovery Associates, LLC*, 2013 U.S. Dist. LEXIS 167636, 2013 WL 6191804 (E.D. Ky. Nov. 26, 2013). In *Stratton*, Ms. Stratton alleged that the defendant Portfolio Recovery Associates, LLC's ("PRA") allegations in its state court complaint that Ms. Stratton owed PRA 8% interest from the date that the original creditor charged off the debt was merely am aspirational request made to the court. *Id.* 2013 U.S. Dist. LEXIS 167636 at 15. This Court concluded that PRA's allegation in its state-court complaint was "a request for prejudgment interest [that] constitutes a request and *not an unsupervised demand*." *Id.* (emphasis added). In stark contrast to *Stratton*, LVNV's extrajudicial addition of prejudgment interest to Mr. Fulk's debt as reported to one or more consumer reporting agencies is an unsupervised demand for interest made outside of any judicial oversight. That is, LVNV did not just make a request for prejudgment interest in a complaint, but rather, awarded prejudgment interest to itself unilaterally.

Interestingly, LVNV has conflicting views about the availability of prejudgment interest as a self-help remedy. In its state-court collection complaint, LVNV alleged that there was no accrued interest on the debt, but instead, alleged that Mr. Fulk owed LVNV prejudgment interest at the rate of 8% per annum on the principal amount of $3487.67 from June 30, 2009 until the date of judgment. (A copy of the state-court complaint is attached as LVNV's Exhibit 1 to its motion to dismiss. Doc.# 8-1.)

There are other good reasons why LVNV should not to be able to accrue, assess, and collect prejudgment interest as a self-help remedy. Based on the sale documents and known problems involving the accuracy and reliability of charged-off debt, LVNV could have no real confidence

that the amount of Mr. Fulk's debt was correct when it began accruing interest on his debt or that the debt was undisputed.

**a. Other Reasons why Prejudgment Interest is not a Self-Help Remedy**

LVNV acquired Mr. Fulk's debt on July 14, 2009 as part of a portfolio of 127,340 total debts. *See* LVNV's chain-of-title documents attached as Exhibit "B." LVNV only acquired a spreadsheet with basic information about Mr. Fulk's debt or any of the other debts it acquired in the same portfolio. *See* LVNV's Exhibit 4, doc.# 8-4. LVNV had no relationship with Mr. Fulk prior to acquiring his debt. LVNV contacted Mr. Fulk over three years after it acquired the debt. LVNV argues that because the amount owed on Mr. LVNV's debt was stated as a sum certain on the spreadsheet, the debt was liquidated and entitled LVNV to unilaterally charge, accrue, and collect prejudgment interest on Mr. Fulk's debt (and presumably all of the other debts in same portfolio) without any judicial intervention or oversight.

But the question of whether the amount of a debt is in fact liquidated is only one part of the equation for awarding prejudgment interest as a matter of course. Prejudgment interest is only awarded by a court as a matter of course on claims that are both liquidated and undisputed. *Wittmer v. Jones*, 864 S.W.2d 885, 891 (Ky. 1993). For several reasons, LVNV had no right or basis to presume that both the amount of Mr. Fulk's debt, or any other debt in the portfolio of debts, was correct and that its claim against Mr. Fulk was undisputed.

Very likely, the bill of sale from HSBC to LVNV "disclaimed all warranties and representations regarding the accuracy of the information they provided at the time of sale about individual debts, essentially selling the debts, with some limited exceptions, 'as is.'"[1]

---

[1] *The Structure and Practices of the Debt Buying Industry* at 25 (FTC Jan. 2013). http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf

As recently explained by the Federal Reserve Bank of Boston:

> Debt is sold at low prices when banks have little or no documentation to provide the buyer—often just an electronic Excel spreadsheet and a few monthly statements. The contracts of sale between bank and debt buyer (also known as *forward-flow agreements*) typically contain broad disclaimers of warranty, including warranty of title, legality, validity, documentation, or accuracy. Further, the contracts usually provide that "ineligible accounts" may be included in the bulk sales, even accounts where the debt has been paid, settled, discharged in bankruptcy, or was never owed to begin with because of identity theft or other fraud committed against the consumer. One widely publicized forward-flow agreement states that the account balances are only "approximate." The sale of unverified, inaccurate, and incomplete accounts has led to consumers getting sued twice on the same debt and to reports of abuse by debt collectors, some with criminal backgrounds.[2]

So HSBC put LVNV on plain notice that the information concerning some or all of the debts in the portfolio could be incorrect and should not be blindly trusted.

In addition to the problems stated *supra*, there are other documented problems that are typical regarding the accuracy and correctness of charged-off debts sold to debt buyers and third-party debt collectors. For example:

- On March 29 2012, American Banker published an article that found that "Bank of America has sold collections agencies rights to sue over credit card debts that it has privately noted were potentially inaccurate or already repaid."[3]

- An August 12, 2012 New York Times article notes that "Lenders … are churning out lawsuits without regard for accuracy, and improperly collecting debts from consumers." And that "[i]nterviews with dozens of state judges, regulators and lawyers … indicated that such flaws are increasingly common in credit card suits. In certain instances, lenders are trying to collect money from consumers who have already paid their bills or increasing the size of the debts by adding erroneous fees and interest costs."[4]

---

[2] Peter A. Holland, Debt-Buyer Lawsuits and Inaccurate Data (Fed. Res. Bank of Boston, Spring 2014) http://www.bostonfed.org/commdev/c&b/2014/spring/debt-buyer-lawsuits-and-inaccurate-data.htm

[3] Jeff Horwitz, *Bank of America Sold Card Debts to Collectors Despite Faulty Records* http://www.americanbanker.com/issues/177_62/bofa-credit-cards-collections-debts-faulty-records-1047992-1.html?zkPrintable=true

[4] Jessica Silver-Greenberg, *Problems Riddle Moves to Collect Credit Card Debt* http://dealbook.nytimes.com/2012/08/12/problems-riddle-moves-to-collect-credit-card-debt/

- JP Morgan Chase shut down its collection unit as a result of shoddy document retention and other problems with its credit card debts. According to Chase employee Linda Almonte Chase sold charged-off credit card debt and judgments riddled with problems such as "missing proofs of judgment or other essential information" (half of the sampled files) including "misstate[ments of] how much the borrower owed" (a quarter of the sampled files).[5] A reporter with the Rolling Stone investigated Ms. Almonte's claims and found that "numerous employees in Chase's credit card services division … confirmed [Ms. Almonte's] story of the company knowingly selling a mountain of errors into the market, and manufacturing robo-signed documents to the tune of thousands per week."[6]

These inherent and endemic problems—the lack of prior relationship between debt buyer and the debtor, the bare-bones information concerning the debt transferred as part of the sale of debts, the disclaimer of reliability, the sale of "ineligible accounts," and the documented problems with many original creditors in terms of accounting and record keeping—show why debt buyers like LVNV should not be allowed to unilaterally and extra-judicially accrue, assess, and collect or attempt to collect prejudgment interest on debts.

But LNVV did just that in this case by furnishing information to one or more consumer reporting agencies that included self-awarded prejudgment interest on Mr. Fulk's debt. This violates the FDCPA. *See e.g. McCabe v. Eichenbaum & Stylianou, LLC*, CIV.A. 2012 U.S. Dist. LEXIS 179129, 7-8, 2012 WL 6624229 (D.N.J. Dec. 19, 2012) ("[T]he assessment of prejudgment interest is a matter of discretion for the trial court, not the parties involved. Defendants, therefore, are not entitled to charge prejudgment interest [prior to judgment] and Plaintiff was possibly charged an undocumented fee in violation of the FDCPA.") (citing *Pignataro v. Port Auth.*, 593 F.3d 265, 274 (3d Cir.2010)); *Nikkel v. Wakefield & Associates, Inc.*, 2012 U.S. Dist. LEXIS 164320, 2012 WL 5571058(D. Colo., Nov. 15, 2012) (holding that because a debt collector "had

[5] Jeff Horwitz, *OCC Probing JPMorgan Chase Credit Card Collections* (American Banker, March 12, 2012). http://www.americanbanker.com/issues/177_49/chase-credit-cards-collections-occ-probe-linda-almonte-1047437-1.html?zkPrintable=1&nopagination=1

[6] Matt Taibbi, *J.P. Morgan Chase's Ugly Family Secrets Revealed* (Rolling Stone, March 13, 2012). http://www.rollingstone.com/politics/blogs/taibblog/j-p-morgan-chases-ugly-family-secrets-revealed-20120313

not yet secured a judgment on" a debt, "Colo.Rev.Stat. § 5–12–102[7] is inapplicable," and, therefore violated the FDCPA).

**b. Yet more Reasons why Prejudgment Interest against Mr. Fulk should be a Judicial Decision**

The facts of this case present yet other reasons why LVNV should not be able to accrue prejudgment interest on Mr. Fulk's debt prior to entry of judgment awarding it prejudgment interest.

**1. LVNV Assessed and Accrued Interest on Mr. Fulk's Debt under Kentucky Law while he Resided in Ohio**

The underlying contract was executed in Ohio in October of 2006. The last payment on the account was made while Mr. Fulk was living in Ohio. Mr. Fulk made all of his payments to HSBC while he was living in Ohio. Fulk affidavit, Exhibit "A." LVNV apparently accrued prejudgment interest on Mr. Fulk's debt under from June 30, 2009 forward. (This assumption is based on the claims in LVNV's state-court collection complaint, which is attached as LVNV's Exhibit 1 to its motion to dismiss. Doc.# 8-1.) But Mr. Fulk did not move to Kentucky until February 2010. *Id.* This means that LVNV assessed and accrued prejudgment interest on Mr. Fulk's under Kentucky law for over a year while he was living in Ohio. Surely, LVNV had no rights whatsoever against Mr. Fulk under Kentucky law while he was living in Ohio and before he moved to Kentucky.

**2. Mr. Fulk's State-Court Defense**

Mr. Fulk is defending LVNV's state-court action against him on grounds that LVNV's claim is barred by the statute of limitations. If this defense prevails, then LVNV will never be able

---

[7] Similar to KRS 360.010, Colo. Rev. Stat. Ann. § 5-12-102(2) provides:

> When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.

to obtain a judgment against him. Consequently, this means that under LVNV's position, it can accrue, assess, and collect prejudgment interest on a claim on which it can never obtain a judgment. But even if the defense fails, Mr. Fulk's good-faith belief in the defense provides grounds for denying prejudgment interest. *Payne*, 24 S.W.3d at 679. While this is a factor the trial court will consider, it has no place under LVNV's considerations. Further, the statute-of-limitations issue has broader application than this case. The issue implicates all debts held by LVNV and held be all other debt collectors that are barred by the statute of limitations.

Filing suit and threatening to file suit to collect a debt barred by the statute of limitations violates the FDCPA (*See* Section IV *infra).* This is an issue of concern to both the FTC and the CFPB.[8] But merely attempting to collect a debt barred by the statute of limitations without threatening legal action does not violate the FDCPA.

Finally, allowing debt collectors like LVNV to accrue, assess, and collect prejudgment interest as a self-help remedy effectively allows debt collectors to accrue interest on many debts immune to any judicial oversight. Consumers with charged-off debts held by debt buyers on their consumer credit report accruing interest have no meaningful way to evaluate the correctness or the legality of the interest charges.

### F. LVNV Violated the FDCPA by Accruing Usurious Interest on Mr. Fulk's Debt

LVNV's state-court complaint alleges that Mr. Fulk owes LVNV interest at 8% per annum from June 30, 2009. (A copy of the state-court complaint attached as LVNV's Exhibit 1 to its motion to dismiss. Doc.# 8-1.) According to Mr. Fulk's March 3, 2014 Creditexpert consumer credit report, LVNV furnished information that $4,771.00 was the amount on the HSBC debt and

---

[8] *See e.g.* joint amicus of the FTC and CFPB in *Buchanan v. Northland Group, Inc.*, No. 13–2523 (6th Cir. Filed March 5, 2014). www.ftc.gov/system/files/documents/amicus_briefs/esther-buchanan-v.northland-group-inc.no.13-2523-6th-cir./1403105buchanan6cir-amicus.pdf

that original amount due on the debt was $3,488.00. Complaint, Doc. #1 at ¶38. So LVNV accrued $1,283.00 in prejudgment interest on Mr. Fulk's debt in the 1,707 days between June 30, 2009 and March 3, 2014. Assuming simple interest, LVNV accrued interest on Mr. Fulk's debt at the rate of $1.33 (rounded to the nearest hundredth) per day ($1,283.00 / 1,707 days) or $485.62 per annum ($1.33 x 365 days). This means that LVNV accrued prejudgment interest on Mr. Fulk's debt at the annual rate of 13.92% per annum. ($1,185.56 / $3,488.00). This rate is usurious and greatly exceeds the legal rate of 8% per annum under KRS 360.010.

### G. LVNV Violated the FDCPA by Accruing, Assessing, and Attempted Collect Prejudgment Interest from Mr. Fulk before it had any Legal Right to do so

LVNV's right to interest at the statutory legal rate of 8% per annum runs from the date payment is due. Payment is not due until is demanded. LVNV first demanded payment from Mr. Fulk on February 1, 2013. But apparently, LVNV began accruing interest on Mr. Fulk's debt over three years before it demanded payment.

#### i. Statutory Interest at the Legal Rate Runs from the Date of Demand for Payment

Under Kentucky law, "[i]nterest on money runs from the time when it becomes due and payable in the absence of an agreement providing otherwise." *Carrs Fork Coal Co. v. Johnson Drug Co.*, 60 S.W.2d 952, 954 (Ky. 1933). A debt other than one an interest-bearing contract, begins to run from demand for payment. *Thornton v. Black*, 173 S.W.2d 819, 820, 1 (Ky. 1943) ("In the absence of a demand for payment no interest is collectible."). The Kentucky Supreme Court construes prejudgment interest under KRS 360.010 consistently with this principle of law. For example, when the Court awards prejudgment interest in lawyer-discipline cases, the Court awards prejudgment interest on funds ordered to be turned over to clients from the date of filing the underlying bar complaint and not from the date from which the funds should have been

returned. *See e.g. Ky. Bar Ass'n v. Thornton*, 392 S.W.3d 399, 417 (Ky. 2013); *Ky. Bar Ass'n v. Porath*, 398 S.W.3d 440, 441 (Ky. 2013). When LVNV acquired Mr. Fulk's debt, it acquired the right to collect the debt but until LVNV made a demand for payment, no payment was due and owing by Mr. Fulk to LVNV. Nor could any payment be due and owing.

Unlike some states, Kentucky does not require that a debtor receive notice of an assignment of a debt or an account. So Mr. Fulk had no notice that LVNV had purchased his debt. On the date of purchase, Mr. Fulk did not know that LVNV now owned the debt. According to the chain-of-title documents supplied by LVNV in discovery, LVNV acquired Mr. Fulk's debt on July 14, 2009. Exhibit "B." According to discovery responses from LVNV in the state-court action, LVNV first demanded payment from Mr. Fulk over three-and-a-half years later on February 1, 2013. (A copy of LVNV's initial communication via counsel with Mr. Fulk is attached as Exhibit "C."). So LVNV had no right to recover prejudgment interest on Mr. Fulk's debt prior to February 1, 2013. The Court should note that LVNV's initial demand in its February 1st dunning letter was $4,490.59, or over $1,000.00 more than the face amount due on the debt when LVNV acquired the debt. This demonstrates why interest should run from demand, not date of acquisition of the debt by the debt buyer/collector.

Here, LVNV increased the amount of the debt by almost 30% before giving Mr. Fulk any opportunity to pay the debt or before he even knew that LVNV had purchased and was accruing interest on the debt. Accruing prejudgment interest at the legal rate before notifying Mr. Fulk that LVNV had purchased the debt or that it was accruing interest on the debt deprived Mr. Fulk of notice and opportunity to pay off the debt. This practice also allowed LVNV to surreptitiously accrue interest on the full amount Mr. Fulk's debt at a much higher rate of return than it could get

under any other comparable investment, especially considering that it had only $175.00 or so invested in the debt.

Consequently, LVNV violated the FDCPA by accruing and assessing interest on Mr. Fulk's debt prior to the date before the right to interest at the legal began to run on the debt.

**H. LVNV's Interest-Rate Based Violations of the FDCPA by Section**

**i. Violation of 15 U.S.C. § 1692e(2)(A)**

15 U.S.C. § 1692e(2)(A) provides that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…
>
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt;

LVNV violated § 1692e(2)(A) by falsely representing to one or more consumer reporting agencies that Mr. Fulk's debt was subject to prejudgment interest prior to entry of judgment awarding LVNV's prejudgment interest. This constitutes a false representation as to the legal status of Mr. Fulk's debt. LVNV also falsely represented the amount of Mr. Fulk's debt by adding prejudgment interest on Mr. Fulk's debt that exceeded the statutory legal rate of 8% per annum and by accruing interest on the debt before it had any legal right to accrue interest on the debt. Furnishing this false information concerning Mr. Fulk's debt constitutes a violation of § 1692e(2)(A). *See e.g. Healey v. Trans Union LLC*, 2011 U.S. Dist. LEXIS 53522, 25, 2011 WL 1900149 (W.D. Wash. May 18, 2011) (holding that plaintiff's claim that debt collector violated § 1692e(2)(A) by falsely representing in "its communications to the credit agencies that [the plaintiff] was responsible for the delinquent Sprint/Embarq account" stated a valid claim for relief).

**ii. Violation of 15 U.S.C. § 1692e(5)**

15 U.S.C. § 1692e(5) provides that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

LVNV attempted to collect the HSBC debt from Mr. Fulk by furnishing negative credit information about Mr. Fulk to one or more consumer reporting agencies. This was an attempt to collect prejudgment interest from Mr. Fulk that could not be legally recovered by LVNV prior to entry of a judgment in its favor awarding it prejudgment interest. LVNV accrued prejudgment interest on Mr. Fulk's debt at rate that exceeds that allowed by Kentucky law and attempted to collect prejudgment interest assessed under Kentucky law for a time period while he resided in Ohio. This constitutes a threat to collect prejudgment interest on a debt from Mr. Fulk that cannot be legally be taken.

**iii. Violation of 15 U.S.C. § 1692e(8)**

15 U.S.C. § 1692e(8) provides that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

LVNV communicated to one or more consumer reporting agencies false information concerning Mr. Fulk and the HSBC debt. The information was false because LVNV added

prejudgment interest to the amount of the debt that it had no legal right to accrue and assess on the debt, including self-awarded prejudgment interest, prejudgment interest in excess of the amount permitted by Kentucky law, and prejudgment interest accrued under Kentucky law for a time period while Mr. Fulk resided in Ohio. LVNV knew or should have known that it had no legal right to assess and accrue prejudgment interest in this manner. This false communication of negative credit information to one or more consumer reporting agencies violates § 1692e(8). *See e.g. Smith v. Encore Capital Group, Inc.*, 966 F. Supp. 2d 817, 826 (E.D. Wis. 2013).

**iv. Violation of 15 U.S.C. § 1692e(10)**

15 U.S.C. § 1692e(2)(A) provides that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…
>
> (2) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

LVNV violated § 1692e(10) by falsely representing to one or more consumer reporting agencies that Mr. Fulk's debt was subject to prejudgment interest prior to entry of judgment in LVNV's favor. This constitutes a false representation as to the legal status of Mr. Fulk's debt. LVNV also falsely represented the amount of Mr. Fulk's debt by adding prejudgment interest on Mr. Fulk's debt that exceeded the statutory legal rate of 8% per annum and by accruing interest on the debt before it had any legal right to accrue interest on the debt. Furnishing this false information concerning Mr. Fulk's debt constitutes a violation of § 1692e(2)(A). *See e.g. Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155, 2010 U.S. Dist. LEXIS 56528, 10-11 (D. Or. 2010) (holding that furnishing false information concerning the date of last payment and date of delinquency of a debt to a consumer reporting agency violates § 1692e(10).

**v. Violation of 15 U.S.C. § 1692f(1)**

15 U.S.C. § 1692f(2)(1) provides that

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

LVNV violated § 1692f(1) by attempting to collect prejudgment interest from Mr. Fulk prior to entry of a judgment awarding it prejudgment interest in its favor, by attempting to collect prejudgment interest from Mr. Fulk at a rate that exceeds the rate allowed by Kentucky law, and attempting to collect prejudgment interest for a time prior to when the right to prejudgment interest at the legal rate began to run. This violates § 1692f(1). *See e.g. Grace v. LVNV Funding, LLC*, 2014 U.S. Dist. LEXIS 71012, 21-22 (W.D. Ky. May 23, 2014) (holding that debt collector's "reporting an amount owing that included an unlawful amount of disguised interest apparently violates three separate provisions of the FDCPA: attempting to collect an amount not permitted by law (15 U.S.C. § 1692(f)(1)), falsely representing the character, amount, or legal status of a debt (15 U.S.C. § 1692e(2)(A), and communicating credit information which is known or should be known to be false (15 U.S.C. § 1692e(8)).

## IV. LVNV Violated the FDCPA by Filing Suit on a Time-Barred Debt

### A. Filing Suit on a Time-Barred Debt Violates the FDCPA

Filing suit on a time-barred debt violates FDCPA. *Knighten v. Palisades Collections, LLC*, 721 F. Supp. 2d 1261, 1271 (S.D. Fla. 2010); *accord Jackson v. Midland Funding, LLC*, 754 F. Supp. 2d 711, 715 (D.N.J. 2010) (noting that "[s]everal district courts [hold] that pursuing a lawsuit which the debt collector knows or should know is time-barred violates the FDCPA"); *Dudek v.*

*Thomas & Thomas Attys. & Counselors at Law, LLC*, 702 F.Supp.2d 826, 833 (N.D.Ohio 2010); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870 (N.D. Ill. 2009) (holding that filing or threatening to file suits to collect a credit card debt, time-barred under the Illinois statute of limitations for unwritten contracts, violates the FDCPA); *Gaisser v. Portfolio Recovery Assocs., L.L.C.*, 571 F. Supp. 2d 1273 (S.D. Fla. 2008); *Jenkins v. General Collection Co.*, 538 F.Supp.2d 1165, 1172 (D.Neb. 2008); *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) (holding that "[f]iling a complaint to collect a debt that has been extinguished by the passage of time clearly falls within Section 1692e(2), prohibiting false representations about the character or legal status of any debt [and] may also violate Section 1692f, which prohibits 'unfair or unconscionable' methods of debt collection"); *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1487 (M.D.Ala. 1987); *see also Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991) (holding that "the threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate").

**B. Relevant Facts**

LVNV filed suit in the Fayette District Court over four years prior to the date the LVNV's cause of action accrued on the debt. Complaint, doc.# 1 at ¶¶ 28-30. The Complaint that LVNV's state-court claim is barred by Kentucky's four-year statute of limitations under KRS 355.2-725. In its motion to dismiss, LVNV does not dispute that its cause of action accrued over four years prior to filing suit against Mr. Fulk in Fayette District Court. Rather, LVNV argues that its claim is subject to a five-year statute of limitations under Kentucky law.

LVNV's reliance on Kentucky law to argue that Mr. Fulk's agreement with HSBC was an account or an account stated is of little relevance here. The underlying agreement at issue was

entered into and executed in Ohio. Mr. Fulk was living in Ohio at the time that he executed the contract. *See* Exhibit "A." Moreover, Mr. Fulk was still living in Ohio when the last payment was made on the debt. *Id.* So any default occurred in Ohio as well. Consequently, the determination of the character and nature of Mr. Fulk's contract for the purchase of the ATV at issue in this case is determined under Ohio law rather than Kentucky law as LVNV argues.

### C. The Purchase of the ATV at Issue in this Case was the Sale of Goods under Ohio Law

On October 1, 2006, Mr. Fulk purchased a Yamaha ATV model number YF2450 from Hales Sport Center, Inc. in Mansfield, OH. *Id.* He financed the purchased through Household Bank (SB), N.A. (A redacted copy of the Sales Slip for sale for the ATV is attached as Exhibit "D.") The underlying agreement financed the purchase price at 9.9% APR for 60 months. *Id.* The Sales Slip provides in pertinent part:

> I acknowledge receipt of a completed copy of this Sales Slip and the purchase of the goods and/or services described and the promise to pay the Unpaid Balance plus any Finance Charges and fees due in accordance with the terms of the Cardholder Agreement and Disclosure Statement, incorporated by reference. I understand that I am thereby granting Household Bank (SB), N.A. a purchase money security interest in the goods described until paid in full….

*Id.*

The question of whether the sale of the Yamaha ATV is broader and has much more significance than what statute of limitations applies to LVNV's state-court complaint against Mr. Fulk. The question also determines whether the agreement is "subject to the provisions of that chapter relative to implied warranties of fitness (ORC Ann. 1302.28) and merchantability (ORC Ann. 1302.27)." *Allied Industrial Service Corp. v. Kasle Iron & Metals, Inc.*, 405 N.E.2d 307, 309 (Ohio Ct. App., 1977). The question is answered using the "predominant-purpose" test. *Cranpark*,

*Inc. v. Rogers Group, Inc.*, 498 Fed. Appx. 563, 568, (6th Cir. Ohio 2012) (citing *Allied Industrial Service Corp.*).

Under the predominant-purpose test, "the test for the inclusion in or the exclusion from sales provisions [UCC statutes] is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved." *Id.* (quoting *Allied Industrial Service Corp. v. Kasle Iron & Metals, Inc.*, 405 N.E.2d at 310). Here, as made clear in LVNV's motion, the service is not labor but providing credit. So under the facts of this case, the question is whether the predominant factor and purpose of Mr. Fulk's agreement with Hales Sport Center, Inc., with financing through HSBC, was for the purchase of goods or for the extension of credit.

Mr. Fulk's only purchase under the agreement with HSBC was the purchase of the ATV. *See* Exhibit "A." The Sales Slip gave HSBC a purchase-money security interest in the ATV, bringing it within the purview of Article 9 of Ohio's UCC. ORC Ann. 1309.103. The ATV is a particularly large purchase. Moreover, the Yamaha Motor Corporation, USA Card Program on which LVNV relies on was signed the same day and time that Mr. Fulk signed the Sales Slip.

Business Wire issued a press release concerning Yamaha Motor Corporation, U.S.A's relationship with HSBC:

> CYPRESS, Calif.--(BUSINESS WIRE)-- Yamaha Motor Corporation, U.S.A., and HSBC Finance Corporation's card and retail services business today announced the signing of a new seven-year agreement that extends their relationship through 2015. HSBC provides revolving financing through the Yamaha Card program for customers who purchase Yamaha outboard engines, motorcycles, scooters, ATVs, Side-by-Side utility vehicles, snowmobiles, personal watercraft, boats, golf cars, generators, accessories and apparel. The products are distributed through Yamaha's network of over 2,100 dealerships nationwide.[9]

[9] http://static-tradeonlytoday-wp.s3.amazonaws.com/wp-content/uploads/2008/12/yamaha21219.pdf

The above makes clear that the Yamaha's USA Card Program is designed to facilitate the sale of Yamaha products and not the issuance of a credit card for purposes of providing card holders with the open credit to make revolving credit purchases. The predominant purpose of the agreement between Mr. Fulk and HSBC was for the sale of the ATV and not to provide Mr. Fulk with credit services. This is further evidenced by the fact that the Sales Slip created a purchase-money security interest in the ATV, which is decidedly atypical in credit card transactions.

The purchase-money security interest brings the transaction under Article 9 of Ohio's UCC, which gives HSBC UCC protections under the sale. But under LVNV's argument, the HSBC agreement strips any and all Article 2 protections from Mr. Fulk, which includes the right to assert any warranty or breach of contract defenses he might have under Article 2. This UCC-for-me-and-none-for-you construction of the HSBC agreement is patently unfair and unconscionable.

**Conclusion and Relief Requested**

For the reasons set forth above, the Court should DENY LVNV's motion to dismiss.

Respectfully Submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
4055 Shelbyville Rd., Suite B
Louisville, KY 40207
(502) 473-6525
Email: james@kyclc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of May, 2014, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ James H. Lawson
James H. Lawson
*Counsel for Plaintiff*